## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT LOUISVILLE

**DOUGLAS G. ZINK,**
                 **Plaintiff**

**v.**                                                 **Civil Action No.**
                                                      **3:04CV407-J**

**JO ANNE B. BARNHART, Commissioner**
 **Social Security Administration,**
                 **Defendant**

### MEMORANDUM OPINION

      This case presents plaintiff Douglas Zink's challenge to the decision of the Commissioner denying his claim to disability insurance benefits and supplemental security income payments. After examining the transcript of record, the arguments of the parties, and the applicable authorities, the Court is of the opinion that the decision of the defendant Commissioner should be affirmed.

      The disability determination process consists of five steps. Wyatt v. Secretary, 974 F.2d 680 (6th Cir. 1992). These steps are approached sequentially, and a finding at any step that is adverse to the claimant terminates the process:

      1. The claimant must not be engaged in substantial gainful activity.

      2. The alleged disabling impairment must be "severe," meaning that it significantly limits the individual's ability to do basic work activities necessary for most jobs, such as walking, standing, sitting, lifting, seeing, hearing and speaking. 20 CFR Section 416.921.

      3. If the claimant has a medical condition that meets or exceeds the impairments listed in

1

Appendix 1 of 20 CFR Part 404, Subpart P of the regulations (often referred to as "the Listings"), the evaluation terminates and the claimant is conclusively presumed to be disabled. Lankford v. Sullivan, 942 F.2d 301 (6th Cir. 1991).

 4. The claimant must be unable to do his or her past relevant work.

 5. If the claimant shows inability to do the past relevant work, the Commissioner must come forward with evidence to show that the claimant can still perform a significant number of jobs. Born v. Secretary, 923 F.2d 1168 (6th Cir. 1990).

 Mr. Zink filed his applications in June of 2002, alleging that he had been unable to engage in any substantial gainful employment since January of 2002. After a hearing, the Administrative Law Judge ("ALJ") found that Mr. Zink had serious impairments that prevented him from performing any of his past relevant work, but that he retained the residual functional capacity to perform jobs that exists in significant numbers.

 The decision is somewhat internally inconsistent in that Finding Number 11 states that he can "perform the full range of light work," while Finding Number 12 states that his "exertional limitations do not allow him to perform a full range of light work." Tr. 26-27. However, as the ALJ spelled out the basis for his Finding Number 12, the Court will interpret the decision in the light most favorable to Mr. Zink, i.e., that the ALJ found him capable of performing a significant number of light work jobs, but not the full range of light work.

 If the ALJ's decision is supported by substantial evidence, the reviewing Court must affirm. Studaway v. Secretary of HHS, 815 F.2d 1074, 1076 (6th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Jones v. Secretary, 945 F.2d 1365 (6th Cir. 1991). The Court's obligation to affirm

in such a case exists regardless of whether we would resolve the disputed issues of fact differently, and regardless of whether there exists substantial evidence to support the opposite conclusion. Stanley v. Secretary, 39 F.3d 115 (6th Cir. 1994), Tyra v. Secretary, 896 F.2d 1024 (6th Cir. 1990), Mullen v Brown, 800 F.2d 535, 545 (6th Cir. 1986).

Mr. Zink's primary complaint concerns disabling pain dating from an accident in which a one ton bale of hay fell on his head. Tr. 39. The ALJ found "While the claimant has impairments that can be expected to produce some discomfort and functional limitations, the objective evidence does not support his contentions regarding the severity and chronicity of his symptoms." Tr. 22. Mr. Zink contends that this determination is not supported by substantial evidence when the record is considered as a whole, and that the ALJ erred in evaluating his the credibility of his complaints of pain.

While pain may support a claim of disability, the claimant's subjective assertions are not sufficient. 20 C.F.R. Sec. 404.1529(a), King v. Heckler, 742 F.2d 968, 974 (6th Cir. 1984). If there is objective medical evidence of an underlying medical condition, the ALJ is required to determine whether objective medical evidence confirms the severity of the alleged pain, or whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain. Stanley v. Secretary, 39 F.3d 115, 117 (6th Cir. 1994), Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994), Jones v. Secretary, 945 F.2d 1365, 1369 (6th Cir. 1991); Duncan v. Secretary, 801 F.2d 847, 853 (6th Cir. 1986). The ALJ may consider muscle spasms, atrophy, reflex abnormalities, neurological deficits, loss of sensation, household and social activities as well as the type of medication used to alleviate the pain. 20 C.F.R. 416.929(c)(3); Jones, supra, at 1370; Blacha v. Secretary, 927 F.2d 228, 231 (6th Cir.

1990).

Mr. Zink suffered a traumatic injury on January 14, 2002, when a one ton bale of hay struck him on the head, resulting in hyperflexion of the neck. Tr. 191. Although he walked approximately a mile following the injury, his symptoms worsened later that day and he was admitted to the hospital and placed on a backboard. Tr. 185. CT scans of neck and head performed at the time showed no evidence of either fracture or soft tissue abnormality. Tr. 197, 199. An MRI showed no significant ligamentous injury, minimal posterior paraspinous edema on the left, and pre-existing hydromylia. Tr. 198. He was discharged two days after the injury with the notation "steady on feet" with a discharge diagnosis of "cervical strain." Tr. 184. A month after the injury and four months after the injury, he was continuing to report back pain. Tr. 204, 207. Followup MRIs on July 8, 2002 revealed a small syrinx at C6/C7. Tr. 206. There was no suggestion that this syrinx could produce pain.

As the ALJ noted, Mr. Zink's recollection of the after-effects of his injury was not always completely consistent. On July 9, 2002, Mr. Zink stated that his injury had left him paralyzed for two days. Tr. 111. Despite the records showing that upon discharge Mr. Zink was "steady on his feet," at the February 19, 2004 hearing, Mr. Zink testified that the injury left him paralyzed from the neck down for four days. Tr. 39. Despite the radiological reports showing no fractures, on September 30, 2002, he reported that the injury had resulted in a "dead center crack" in a cervical vertebrae. Tr. 241. Nonetheless, these inconsistencies are relatively minor and they are not cited as the primary basis for the ALJ's decision.

Rather, the primary basis for the ALJ's rejection of claimant's statements of any continuing impact of the injury on his ability to work is found in "the reports of the treating and

examining practitioners, and the findings made on examination." Specifically, "the objective evidence does not support his contentions regarding the severity and chronicity of his symptoms." Tr. 22. Mr. Zink has been unable to point to any medical evidence of a condition that could be expected to produce severe and constant back and neck pain. Repeated radiological studies detected neither bony nor soft tissue abnormalities. The records of Dr. McClure, plaintiff's treating physician, fail to support the suggestion that Mr. Zink is unable to engage in any gainful employment. Indeed, on the very day he proclaimed Mr. Zink "totally disabled," Dr. McClure noted normal range of motion and negative straight leg raising, and further recorded that Mr. Zink was in "no apparent distress." Tr. 291.

Furthermore, Mr. Zink's own report of his daily activities is at odds with his claim of constant, severe and distracting pain. Although he no longer rides horses, he continues to feed and care for livestock. He drives to his job, where he works part-time, four days a week, as a school bus monitor. The ALJ was also entitled to consider his own observations of Mr. Zink, noting that he did not give the appearance of a person in severe or prolonged pain. Tr. 24.

The Court finds no error in the ALJ's evaluation of Mr. Zink's complaints of pain. As substantial evidence supports the ALJ's determination, the decision must be affirmed.